PEOPLE ex rel. MAHONEY v. MacLEAN et al., Police Commissioners.

(*Supreme Court, General Term, First Department.* October 24, 1890.)

MUNICIPAL CORPORATIONS—DISCHARGE OF POLICEMAN.

> Relator was dismissed from the police force upon a charge of being so drunk as to be unfit for patrol duty. The charge was supported by the testimony of captain and sergeants to the effect that he staggered, and that his breath smelt strongly of whisky. Relator's explanation was that he was under the influence of quinine, and that the reason he did not report himself sick was that, being a new man on the force, his brother being on the sick list, and his father having recently died, he did not want to cause any distress to his mother. A physician testified that the amount of quinine taken by relator would account for his appearance. *Held* that, there being evidence to sustain the commissioners' decision, it would not be disturbed. BRADY, J., dissents.

*Certiorari* to review the dismissal of relator, Denis J. Mahoney, from the police force of the city of New York.

Argued before VAN BRUNT, P. J., and BRADY and DANIELS, JJ.

*John M. Tierney,* for relator. *John J. Delaney,* for respondent.

BRADY, J. The relator, who was a patrolman attached to the twelfth precinct, was dismissed upon a charge of conduct unbecoming an officer, the specification being that at 6 o'clock P. M. roll-call he was so much under the influence of liquor as to be unfit for patrol duty. The testimony in support of the charge was by captain and sergeants, who testified that when the relator went into the station-house, a few minutes before roll-call, he staggered; and when subsequently walked out with other officers in the ranks he was uneasy and unsteady; and his breath smelled of liquor. It must be noted that no police surgeon was called, and that the charge rests upon the statement of these officers. About the time of this occurrence, the relator stated that he took quinine pills, as a reason for his condition, whatever it may have been, and exhibited the box containing what was left of them, which he got at a drug-store on Grand street; and it appears that at 9 o'clock he was sent out on duty, and performed his tour. It also appears that when he was charged by his captain with being under the influence of liquor he said he had not drank anything. He proved also by a brother officer, who saw him coming out of the drug-store, and asked him what was the matter with him, that his an-

swer was that he was suffering from pains in the chest, back, and head, and had a heavy cold.    The relator's story was that, after coming out of the drug-store, he went to his home, took five five-grain pills,—taking three first and two afterwards,—ate a light supper, and went to the station-house to turn out on patrol duty; that he met the officer who had previously seen him coming from the drug-store, and, on being asked by him if he felt any better, replied that he was much worse, and suffered very much from pain in the head, and dizziness.    The officer asked him why he did not report sick, and he answered that, being a new man in the force, and having a brother on the sick list, and having buried his father a short time before, he did not like to put his mother to any further trouble, as she was an old woman, and he thought he could fight the disease off.    This was about a quarter to 6 o'clock, and it thus appears that according to his own statement he went to the station-house, though feeling worse, rather than return home, and in the belief that the captain would see his condition, and send for a surgeon.    There is a conflict as to his appearance of drunkenness, and evidence of a physician of this city that the quantity of quinine which the relator took would account for his appearance when he was charged with being under the influence of liquor; that the effect would be to make him look sleepy, dazed, and that he might stagger; and further that the same effect might be produced with less than that amount of quinine taken by the relator; that he had seen persons show symptoms of vertigo after taking 10 grains.    The relator testified he had taken no liquor of any kind, and the case therefore is destitute of any other evidence than the impressions created upon the witnesses called to prove the charge by his appearance, and by his staggering, which was accounted for by the testimony of the physician already mentioned, and by his own statement, in the absence of any proof existing in the case that he had drank any spirituous liquor.    If the rule which was declared by the court of appeals in earlier cases still prevailed, it would be our duty to affirm the judgment of the commissioners.    But in the recent case of *People* v. *French,* 119 N. Y. 502, 23 N. E. Rep. 1061, the court of last resort has decided that under the provisions of the Code of Civil Procedure, (section 2140,) in regard to questions to be determined upon the hearing on the return of a *certiorari,* where that writ is issued to review the determination of the police commissioners, the supreme court may inquire, not only whether there was any competent proof of all the facts necessary to be proved in order to authorize the making of the determination, but it. must also look into the evidence; and, if it finds that there is a preponderance against the determination of the commissioners, it has the same jurisdiction to reverse the determination that it now has to set aside the verdict of a jury as against the weight of evidence.    An examination of the record in this case shows a preponderance of proof in favor of the statement of the relator that his supposed inebriety was the result of illness, and the quinine which he took to overcome it.    His failure to report himself sick is also explained by him satisfactorily.    Being a new man, he said, his brother being on the sick list, and his father having recently died, he did not want to cause · any distress to his mother.    There is absolutely no evidence in the case against his statement, except the impressions which his conduct made upon captain and sergeants, and others who testified as to his condition.    But these impressions are overcome by the facts, united to the impressions of the. other witnesses who saw him about the time he reported for duty.    Applying the principles of the case decided in the court of appeals, the judgment of the commissioners should be reversed, and the relator restored to duty.    Ordered accordingly.

VAN BRUNT, P. J.    I cannot concur in the conclusion arrived at by Mr. Justice BRADY.    A jury would have been justified in finding that the relator was under the influence of liquor.    There is no evidence to show that even

25 grains of quinine will make a man's breath smell of liquor. Either the officers examined or witnesses testified falsely or the relator, and this was a question to be determined by the commissioners. The writ should be dismissed.

DANIELS, J. There was evidence from which the commissioners could reasonably conclude that the relator was intoxicated. And the propriety of that conclusion has not been overcome by the evidence on the part of the relator. It was for the commissioners to decide whether the charge was sustained by the evidence. There was no such preponderance in favor of the relator as would permit a verdict against him to be set aside. I therefore agree that the determination should be affirmed.